# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**THELMA J. MCGADDYE**
  Plaintiff(s),

V.

**CHRISTINE WORMUTH,**

  Secretary, Department of The Army

    Agency.

  Defendant(s),

) CASE NO. _____
) EEOC Petition No. 2023002694
) MSPB No. DA-1221-17-0311-W-1
) MSPB No. DA-0752-17-0092-I-1
) MSPB No. DA-1221-15-0283-W-1
) Agency No. ARUSAR14FEB00563
) EEOC Case No. 451-2015-00131X
)
) **Jury Trial: Yes**

FILED 2023 JUN -9 AM 9:05
CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
ORLANDO, FL

## COMPLAINT FOR EMPLOYMENT
## DISCRIMINATION/RETALIATION AND DEMAND FOR JURY TRIAL

**I.** **The Parties To This Complaint: (Employees or Former Employees from the Agency)**

a. <u>COL Herman Ter Meer</u> – Knew COL(P)/BG Norman Green from working with him at the 79th SSC and was assigned to several position within the Agency (4th Sustainment Command (Expeditionary) (ESC) under the direction of COL(P)/BG Green. He served as the Deputy to Green, Chief of Staff (COS) to Green etc. COL Ter Meer was in the rating chain of COL(P)/BG Green. On April 4, 2014 Plaintiff was humiliated in front of her subordinates and peers when she was placed on administrative leave without reason via memo from Mr. Hildebrandt and escorted from her workplace by military police. Mr.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

Hildebrandt gave plaintiff a box and told her to pack up all her personal belongs and turn in her government computer, cell phone and office keys and told her not to come back into the building.  Plaintiff was not given a reason for being placed on Administrative Leave and felt like she was being fired.  She was so upset crying hysterically and went directly to the mental health counselor with the VA, which she started seeing due to the hostile work environment.  Later that evening, plaintiff spoke via phone to CPT Peter Palms (AGR Soldier assigned to the G4 section where plaintiff worked) and he told her that he was upset what happen and went into the office of COL TerMeer who make the comment that what happened to plaintiff was self-inflicted.  COL Ter Meer was aware of the EEO complaint filed by plaintiff and all the other issues ongoing with the plaintiff and the Agency when he used his power and authority to discriminate and deny plaintiff continued one year employment and placement in the PPP as was afforded to other employees in the same situation as plaintiff.

b. <u>Major General (MG) Megan P. Tatu</u> – On February 9, 2013, was promoted to two star general and took command of the 79th Sustainment Support Command (SSC) (now known as 79th Theater Sustainment Command (TSC)) from MG William D. Frink Jr, who served as commander since inception of 79th SSC in 2010.  MG Tatu was the first line rater to COL(P)/BG Norman B. Green.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

c. <u>COL(P)/Brigade General (BG) Norman B. Green</u> – Took command as Commanding General of the 4th Sustainment Command (Expeditionary) known as 4th ESC and Agency in this complaint, on July 14, 2012. He came from the 79th Sustainment Support Command (SSC) (now known as 79th Theater Sustainment Command (TSC)), which was the higher headquarters for the Agency. While at the 79th SSC, he served as the Chief of Staff (COS) as a Colonel (COL). The symbol (P) represents "Promotable" and indicates a Soldier is eligible to be promoted. Usually a Colonel (P) would be promoted to Brigade General (BG) once they are assigned to take command, as was COL(P) Green. However, due to other pending allegations he was not promoted to BG, until September 14, 2013, over a year later, after taking command in 2012. COL(P)/BG Green made several unwelcome and inappropriate sexual remarks to the plaintiff, and she emailed her complaint/concerns to MG Tatu for assistance.

d. <u>Robert Hildebrandt</u> – Started working for the Agency around July 2012 as the Command Executive Officer (CXO) and senior civilian employee as a Mil Tech. COL(P) Green was the first line supervisor for Mr. Hildebrandt and MG Megan P. Tatu was his second line supervisor. Mr. Hildebrandt was hired a year earlier but did not start working until a year later due to his deployment with his previous military unit.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

e. <u>Gina Burkhalter</u> - Hired by Agency as a GS-11 MIL Tech in the G8 Section around July/August 2013 and fired within a month and she filed an EEO complaint. On August 22, 2013; Mr. Hildebrandt was notified by EEO that Gina Burkhalter filed a complaint, which Plaintiff was named as a witness in the EEO complaint against Agency by Ms. Burkhalter. Ms. Burkhalter was informed of this information by the EEO office.

f. <u>Gina Ortiz</u> – Employed as a Mil-Tech and Senior Civilian (GS12) for the G8 Section. Plaintiff was the Senior Civilian (GS12) for the G4 Section. Therefore, Ms Ortiz was a peer to Plaintiff. Ms. Ortiz lost her dual status at no fault of her own, as did plaintiff. Ms. Ortiz was allowed continued employment for one year after losing her dual status and was placed in the PPP, unlike the plaintiff.

g. <u>Sandra Shay</u> – Employed as a Mil Tech in the subordinate commands for the Agency and lost her dual status at no fault of her own. Ms. Shay was allowed continued employment for one year after losing her dual status and was placed in the PPP, unlike the plaintiff.

h. <u>Duane Murray</u> – Employed as a Mil Tech in the subordinate commands for the Agency and lost his dual status at no fault of his own. Mr. Murray was allowed continued employment for one year after losing his dual status and was placed in the PPP, unlike the plaintiff.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

i. <u>Maureen Simmonds</u> – Employed as a Mil Tech in the subordinate commands for the Agency and lost her dual status at no fault of her own. Ms. Simmonds was allowed continued employment for one year after losing her dual status and was placed in the PPP, unlike the plaintiff.

j. <u>Toni R. Kvalheim</u> – Employed in the OPM HR office for the Agency and would not put plaintiff into the PPP as requested by plaintiff via emails.

## II. Basis For Jurisdiction:

This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin). The following is the text of Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII), as amended, as it appears in volume 42 of the United States Code, beginning at section 2000e. Title VII prohibits employment discrimination based on race, color, religion, sex, and national origin. The Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) and the Lily Ledbetter Fair Pay Act of 2009 (Pub. L. 111-2) amend several sections of Title VII. In addition, section 102 of the CRA, amends the Revised Statutes by adding a new section following section 1977 (42 U.S.C. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII, the Americans with Disabilities Act of 1990, and section 501 of the Rehabilitation Act of 1973. An Act to enforce the constitutional right to vote, to confer jurisdiction upon the district courts of the United States to

5

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

provide injunctive relief against discrimination in public accommodations, to authorize the attorney General to institute suits to protect constitutional rights in public facilities and public education, to extend the Commission on Civil Rights, to prevent discrimination in federally assisted programs, to establish a Commission on Equal Employment Opportunity, and for other purposes. Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that this Act may be cited as the "Civil Rights Act of 1964".

a. <u>Definition – SEC. 2000e. [Section 701]</u>

   1) The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 [originally, bankruptcy], or receivers.

   2) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

defined in section 2102 of Title 5 [United States Code]), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26 [the Internal Revenue Code of 1986], except that during the first year after March 24, 1972 [the date of enactment of the Equal Employment Opportunity Act of 1972], persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

3) The term "employment agency" means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employee's opportunities to work for an employer and includes an agent of such a person.

4) The term "labor organization" means a labor organization engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

5) A labor organization shall be deemed to be engaged in an industry affecting commerce if (1) it maintains or operates a hiring hall or hiring office which procures employees for an employer or procures for employees opportunities to work for an employer, or (2) the number of its members (or, where it is a labor organization composed of other labor organizations or their representatives, if the aggregate number of the members of such other labor organization) is (A) twenty-five or more during the first year after March 24, 1972 [the date of enactment of the Equal Employment Opportunity Act of 1972], or (B) fifteen or more thereafter, and such labor organization- (1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended [29 U.S.C. 151 et seq.], or the Railway Labor Act, as amended [45 U.S.C. 151 et seq.]; (2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or (3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or (4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

enjoy membership or become affiliated with such labor organization; or (5) is a conference, general committee, joint or system board, or joint council subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection.

6) The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

7) The term "commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

8) The term "industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor-Management Reporting and Disclosure Act of 1959 [29 U.S.C. 401 et seq.], and further includes any governmental industry, business, or activity.

9) The term "State" includes a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act [43 U.S.C. 1331 et seq.].

10) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

11) The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

inability to work, and nothing in section 2000e-2(h) of this title [section 703(h)] shall be interpreted to permit otherwise. This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion: Provided, that nothing herein shall preclude an employer from providing abortion benefits or otherwise affect bargaining agreements in regard to abortion.

12) The term "complaining party" means the Commission, the Attorney General, or a person who may bring an action or proceeding under this subchapter.

13) The term "demonstrates" means meets the burdens of production and persuasion.

14) The term "respondent" means an employer, employment agency, labor organization, joint labor management committee controlling apprenticeship or other training or retraining program, including an on-the-job training program, or Federal entity subject to section 2000e-16 of this title.

b. <u>Other Unlawful Employment Practices SEC. 2000e-3. [Section 704]</u>

1) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management

committee controlling apprenticeship or other training or retraining, including on—the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

2) Printing or publication of notices or advertisements indicating prohibited preference, limitation, specification, or discrimination; occupational qualification exception. It shall be an unlawful employment practice for an employer, labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, or relating to admission to, or employment in, any program established to provide apprenticeship or other training by such a joint labor-management committee, indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except

12

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment.

c. <u>Enforcement Provisions SEC. 2000e-5. [Section 706]</u>

1) Power of Commission to prevent unlawful employment practices. The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title *[section 703 or 704].*

2) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause. Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor management committee controlling apprenticeship or other training or retraining,

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

public by the Commission, its officers, or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to act with respect to the charge.

3) State or local enforcement proceedings; notification of State or local authority; time for filing charges with Commission; commencement of proceedings.  In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty- day period shall be extended to one hundred and twenty days during

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

4) State or local enforcement proceedings; notification of State or local authority; time for action on charges by Commission.  In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political subdivision of a State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days (provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective day of such State or local law), unless a shorter period is requested, to act under such State or local law to remedy the practice alleged.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

5) Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system: (1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency. (2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.  (3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.  (B) In addition to any relief authorized by section 1977A of the Revised Statutes (42 U.S.C. 1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

6) Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine case; assignment of case for hearing; expedition of case; appointment of master: (1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance. (2) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited. (3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28 *[United States Code]*, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought. (4) It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case. (5) It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

7) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders.  (1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.  (2) (A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

section 2000e-3(a) of this Title *[section 704(a)]*.  (B) On a claim in which an individual proves a violation under section 2000e-2(m) of this title *[section 703(m)]* and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court- (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title *[section 703(m)]*; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

8) Provisions of chapter 6 of Title 29 not applicable to civil actions for prevention of unlawful practices.  The provisions of chapter 6 of title 29 *[the Act entitled "An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes," approved March 23, 1932 (29 U.S.C. 105-115)]* shall not apply with respect to civil actions brought under this section.

9) Proceedings by Commission to compel compliance with judicial orders in any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

10)     Appeals.   Any civil action brought under this section and any proceedings brought under subsection (i) of this section shall be subject to appeal as provided in sections 1291 and 1292, Title 28 *[United States Code]*.

11) Attorney's fee; liability of Commission and United States for costs.   In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

d.  Employment By Federal Government SEC. 2000e-16. [Section 717]

1) Discriminatory   practices   prohibited,   employees   or   applicants   for employment subject to coverage. All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in   section   102   of   Title   5   *[United   States   Code]*,   in   executive agencies *[originally, other than the General Accounting Office]* as defined in section 105 of Title 5 *[United States Code]* (including employees and applicants for employment who are paid from non-appropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

2) Equal Employment Opportunity Commission; enforcement powers; issuance of rules, regulations, etc.; annual review and approval of national and regional equal employment opportunity plans; review and evaluation of equal employment opportunity programs and publication of progress reports; consultations with interested parties; compliance with rules, regulations, etc.; contents of national and regional equal employment opportunity plans; authority of Librarian of Congress.  Except as otherwise provided in this subsection, the Equal Employment Opportunity Commission *[originally, Civil Service Commission]* shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. The Equal Employment Opportunity Commission *[originally, Civil Service Commission]* shall- (1) be responsible for the annual review and approval

26

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

of a national and regional equal employment opportunity plan which each
department and agency and each appropriate unit referred to in subsection
(a) of this section shall submit in order to maintain an affirmative program
of equal employment opportunity for all such employees and applicants for
employment; (2) be responsible for the review and evaluation of the
operation of all agency equal employment opportunity programs,
periodically obtaining and publishing (on at least a semiannual basis)
progress reports from each such department, agency, or unit; and (3)
consult with and solicit the recommendations of interested individuals,
groups, and organizations relating to equal employment opportunity. The
head of each such department, agency, or unit shall comply with such rules,
regulations, orders, and instructions which shall include a provision that
an employee or applicant for employment shall be notified of any final
action taken on any complaint of discrimination filed by him thereunder.
The plan submitted by each department, agency, and unit shall include, but
not be limited to- (1) provision for the establishment of training and
education programs designed to provide a maximum opportunity for
employees to advance so as to perform at their highest potential; and (2) a
description of the qualifications in terms of training and experience
relating to equal employment opportunity for the principal and operating
officials of each such department, agency, or unit responsible for carrying

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

out the equal employment opportunity program and of the allocation of personnel and resources proposed by such department, agency, or unit to carry out its equal employment opportunity program.   With respect to employment in the Library of Congress, authorities granted in this subsection to the Equal Employment Opportunity Commission *[originally, Civil Service Commission]* shall be exercised by the Librarian of Congress. Civil action by employee or applicant for employment for redress of grievances; time for bringing of action; head of department, agency, or unit as defendant Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission *[originally, Civil Service Commission]* upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission *[originally, Civil Service Commission]* on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition

28

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title *[section 706]*, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

3) Section 2000e-5(f) through (k) of this title applicable to civil actions. The provisions of section 2000e-5(f) through (k) of this title *[section 706(f) through (k)]*, as applicable, shall govern civil actions brought hereunder, and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties.

4) Government agency or official not relieved of responsibility to assure nondiscrimination in employment or equal employment opportunity. Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government.

5) Section 2000e-5(e)(3) *[Section 706(e)(3)]* shall apply to complaints of discrimination in compensation under this section.

e. <u>Other Unlawful Employment Practices SEC. 2000e-3. [Section 704]</u>

1) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on—the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

2) Printing or publication of notices or advertisements indicating prohibited preference, limitation, specification, or discrimination; occupational qualification exception. It shall be an unlawful employment practice for an employer, labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, or relating to admission to, or employment in, any program established to provide apprenticeship or other training by such a joint labor-management

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

committee, indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment.

III. **Statement of Claim:** *(Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.)*

a. These matters pertain to matters of discrimination covered by section 2302(b)(1)(A) – Prohibited Personnel Practices. Any employee who has authority to take, direct others to take, recommend or approve any personnel actions, shall not, with respect to such authority; Discriminate for or against any employee or applicant for employment – on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16) Employment by Federal Government.

b. Retaliation discrimination was a contributing factor in the Agency's decision to deny the Plaintiff continued employment up to one (1) year after the loss of her dual status in accordance with Section 10 U.S.C. § 10218(a)(3)(B)(ii)(II), because she engaged in protected activity. It is Plaintiffs claim that COL Herman Ter Meer was acting on behalf of the Agency when he discriminated against her

31

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

because plaintiff participated in protected activity when she emailed MG Tatu on June 6, 2013, to complain of sexual harassment by COL(P) Green.    Afterwards Plaintiff filed EEO complaint and many other complaints when several members of the Agency started taking adverse actions against plaintiff out of retaliation, which was so serve, it created a hostile work environment for plaintiff which created several mental health issues which plaintiff now suffers from. Plaintiff had to amend her complaint on five separate occasions due to continued retaliation of adverse actions.   Per EEOC, a retaliation claims challenging action taken because of EEO-related activity has three elements: (1) Protected Activity: "Participation" in an EEO process or "Opposition" to discrimination.  Plaintiff was protected under opposition and participation discrimination which includes actions such as complaining or threatening to complain about alleged discrimination (Sexual harassment) against oneself or others; providing information in an employer's internal investigation of an EEO matter; refusing to obey an order reasonably believed to be discriminatory; advising an employer on EEO compliance; resisting sexual advances or intervening to protect others; passive resistance (allowing others to express opposition); and requesting reasonable accommodation for disability or religion.    Plaintiff complained to MG Tatu about COL(P) Green in her workplace when he made unwelcome sexual harassing comments, remarks and statements that made her uncomfortable as she believed them to be a violation of the law and prohibit

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

sexually harassment and considered sex discrimination under Title VII. *Okoli v. City of Balt.*, 648 F.3d 216, 224 (4th Cir. 2011) (ruling that it was sufficient to constitute "opposition" that plaintiff complained about "harassment" and described some facts about the sexual behavior in the workplace that was unwelcome, and that she did not need to use the term "sexual harassment" or other specific terminology); *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 964 (9th Cir. 2009) (holding that allegations need not have identified all incidents of the discriminatory behavior complained of to constitute opposition because "a complaint about one or more of the comments is protected behavior"); *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000) (ruling that reasonable jury could conclude plaintiff "opposed discriminatory conduct" when she told her harasser, who was also her supervisor, to stop harassing her). Also, On August 22, 2013, Mr. Robert Hildebrandt was notified by EEO that Gina Burkhalter filed a complaint and Plaintiff was named as a witness in the EEO complaint against Agency by Gina Burkhalter. Ms. Burkhalter was informed of this information by EEO office, as she was discriminated against when she was wrongly terminated. There were many other protected complaints Plaintiff filed and participated in, such as IG, Congress, OSC, Aggrievance, etc. therefore Protected Activity existed. (2) Materially Adverse Action: taken by the employer; Retaliation expansively reaches any action that is "Materially Adverse," meaning any action that might

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

well deter a reasonable person from engaging in protected activity. Plaintiff suffered work-related adverse actions and harassing conduct as retaliation. Plaintiff was severely harmed when she was terminated and only given forty-five (45) to fifty-three (53) days' notice as her employment with the 4th ESC was her primary source of income. When the Agency hired Plaintiff, they also paid for her to be relocated to San Antonio, TX from Orlando, FL. Plaintiff did not have any friends or family in San Antonio, TX when she was relocated and never thought or expected the Agency to fire her with very little notice. Plaintiff's employment with the Agency was her primary source of income which she depended on financially. This position with the Agency was Plaintiffs first government job which she spent a couple years trying to achieve. Plaintiff was in her forties and recently coming off activity duty orders seeking a permanent government job, where she could buy back her military time with the intension of reducing the amount of time, she would have to work to reach retirement, and she did just that, until she was discriminated against when she was terminated and not afforded the same opportunities as her co-workers. Plaintiff suffered a financially lost as she had to borrow money to move back to Orlando, FL and figure out how to survive financially. Plaintiff was also diagnosed with PTSD, anxiety and depression due to the severity of the hostile work from retaliation. Plaintiff expressed her concern of retaliation to MG Tatu when she complained on June 6, 2013, and might not have complained if she knew she was in fact

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

going to be discriminated and retaliated against. She trusted and believed MG Tatu was going to protect and guide her as she didn't know what to do, as she was uncomfortable and only wanted to be able to work in a safe environment. MG Tatu tried to use the SHARP Program for Soldiers to address Plaintiffs civilian issue of Equal Employment Opportunity. MG Tatu violated title 10 U.S. C. § 1561 on Complaints of Sexual Harassment when she did not do an investigation as stated in 10 U.S.C. §1561. MG Tatu's actions fail to protect Plaintiff as she noted in her email to MG Tatu that she was afraid of retaliation. Plaintiff received numerous adverse actions in both her miliary and civilian capacities. The Agency (4th ESC) never gave Plaintiff or any other civilians, training on EEO or harassment. The Agency did give training to the Soldiers, which is a different programs and process then those for civilian employees. Although Plaintiff received training as a Soldier, it did not address the requirements as a civilian employee, which Plaintiff was a civilian employee and never received training or instructions prior to her claim. (3) Requisite level of Causal Connection: between the protected activity and the materially adverse action. Unlawful retaliation is established when a causal connection is established between a materially adverse action and the individual's protected activity. The retaliatory animus need not necessarily be held by the employer's official who took the materially adverse action; an employer still may be vicariously liable if one of its agents, motivated by discriminatory or retaliatory

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

animus, intentionally and proximately caused the official to take the action. *Staub v. Proctor Hosp.*, 562 U.S. 411, 418-22 (2011) (applying "cat's paw" theory to a retaliation claim under the Uniformed Services Employment and Reemployment Rights Act, which is "very similar to Title VII"; holding that "if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable"); *Zamora v. City of Hous.*, 798 F.3d 326, 333-34 (5th Cir. 2015) (applying *Staub*, the court held there was sufficient evidence to support a jury verdict finding retaliatory suspension); *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 552 (8th Cir. 2013) (applying *Staub*, the court upheld a jury verdict in favor of white workers who were laid off by management after complaining about their direct supervisors' use of racial epithets to disparage minority coworkers, where the supervisors recommended them for layoff shortly after workers' original complaints were found to have merit).  Plaintiff was terminated on November 26, 2016, which is fifty-three (53) days after losing her dual status requirement as a condition of employment when she was medically retired from the Army at no fault of her own, effective October 4, 2016.   United States Code 10 § 10216(a)(1)(B) provides that a military technician (dual status) is required as a condition of that employment to maintain membership in the Selected Reserve. 10 U.S.C. § 10218(a)(3)(A)(ii)(II) provides that a dual status military technician

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

shall be separated or retired, in the case of a technician first hired as a military technician (dual status) after February 10, 1996, no later than <u>one year</u> after the date on which dual status is lost.  Plaintiff lost her dual status requirement on October 4, 2016, which means she did not have to be terminated until October 4, 2017.  In addition, 10 U.S.C. § 10216(e) Dual Status Requirement: (1) Funds appropriated for the Department of Defense may not (except as provided in paragraph (2)) be used for compensation as a military technician of any individual hired as a military technician (dual status) after February 10, 1996, who is no longer a member of the Selected Reserve. (2) Except as otherwise provided by law, the Secretary concerned may pay compensation described in paragraph (1) to an individual described in that paragraph who is no longer a member of the Selected Reserve for a period <u>up to 12 months</u> following the individual's loss of membership in the Selected Reserve if the Secretary determines that such loss of membership was not due to the failure of that individual to meet military standards.   Plaintiff meets the dual status requirement of 10 U.S.C. § 10216(e)(2) shown above, as the Secretary determine that her loss of membership was not due to her fault as stated in her orders and therefore is entitled to continued employment for twelve (12) months following the loss of her membership in the Selected Reserve.  The decision to terminate Plaintiff fifty-three (53) days after losing her dual status requirement instead of the allowable/eligible Three-Hundred and Sixty-Five (365) days was motivated

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

out of retaliation against Plaintiff for discrimination when she complained of sexual harassment to MG Tatu on June 6, 2013. Evidence and causal connection this decision was motivated by retaliation was the fact that several other employees in the same situation as Plaintiff who lost their dual status requirement due to no fault of their own, were allowed continued employment for twelve (12) months pass the date they lost their dual status requirement. Plaintiff was not treated in the same fashion as other employees. The names of a few of those individuals are Gina Ortiz, Sandra Shay, Duane Murray, and Maureen Simmonds. Plaintiff was discriminated against and treated unfairly and different from other employees due to her report of sexual harassment to MG Tatu on June 6, 2013, as well as several other complaints filed, including the EEO complaint. Prior to her complaint, plaintiff received awards and high-performance evaluations, however, after the complaint she received enormous adverse actions from July 2013 until November 2016 when she was terminated. *See, e.g., Quiles-Quiles v. Henderson*, 439 F.3d 1, 8-9 (1st Cir. 2006) (concluding that jury could infer causation from evidence that harassment by supervisors intensified shortly after plaintiff filed an internal complaint); *Hossaini v. W. Mo. Med. Ctr.*, 97 F.3d 1085, 1089 (8th Cir. 1996) (holding that a reasonable factfinder could infer that defendant's explanation for plaintiff's discharge was pretextual where defendant launched investigation into allegedly improper conduct by plaintiff shortly after she engaged in protected activity). All those

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

whom Plaintiff alleged retaliatory actions against her were in the performance evaluation chain of her sexual harasser, COL(P)/BG Green.

c.   Retaliation discrimination was a contributing factor in the Agency's decision to deny the Plaintiff request to participate in the Priority Placement Program (PPP) after the loss of her dual status, because she engaged in protected activity.  Army Reserve (AR) Military Technician (MT) Program (Program D) (1) This program applies to dual status AR MTs initially employed after December 8, 1983, who are scheduled to be separated from their civilian positions as a result of loss of Selected Reserve membership and/or compatibility through no fault of their own. This Chapter provides for registration and referral of AR MTs who are subject to November 2019 Priority Placement Program (PPP) Handbook 11-2 Public Law 104-106 (reference (c)) and Public Law 98-212 (reference (d)) to non-AR MT positions within the Army. (2) This program also applies to AR NDSTs and dual status MTs who are subject to reference (e) and lose their Selected Reserve membership through no fault of their own. This Chapter provides for registration and referral of these employees to non-AR MT positions within the Army. Plaintiff contacted Toni R. Kvalheim as stated in her removal notice and requested to be placed in the PPP on October 17, 2016.  Plaintiff was not allowed to be registered and was not registered in the PPP.  Plaintiff was told she needed to first apply for OPM disability and depending on outcome would determine if she could be placed in the PPP.  Plaintiff applied for OPM disability on November

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

20, 2017, and was denied.  She then requested again to be enrolled in the PPP and again was not enrolled nor allowed to be enrolled.   Because Plaintiff was not placed in the PPP, she has not able to obtain another government position.  Also, because the Agency recommend Plaintiff's security clearance be revoked and it was, Plaintiff had to appeal and was granted her security clearance around October 2018.  Plaintiff was able to obtain a contractor job with the government in April 2019 which required a Security Clearance but doesn't have the same benefits as a Department of Defense Civilian, which plaintiff was.      Plaintiff suffered from November 26, 2016, to April 19, 2018, due to the early termination, denied security clearance and denied placement in the PPP.   Plaintiff will never has the same employee benefits she once had as a Government Civilian Employee.

d. Conclusion:  The Agency tried to use Plaintiffs military position to cause her to lose her dual status and in essence she would no longer meet the conditions of employment and the Agency would be able to terminate her employment. However, Plaintiff was able to successfully appeal all the negative military actions taken against her and have them all removed or corrected using military regulations and laws which made Plaintiff whole again in her military status.

However, Plaintiff has never been made whole in her civilian capacity.  After June 6, 2013, Plaintiff, in her civilian capacity, received 1) unjust/unfounded Letter(s) of concern; 2) Less than deserving performance evaluation(s); 3) Denied civilian award(s); 4) Denied civilian leave; 5) Revoked Security Clearance; 6) Mocked in

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

public by senior leadership; 7) Suspended and humiliated in front of co-works and others; 8) Placed in a hostile and harassing work environment; 9) Discriminated and retaliated against; and 10) Developed permeant mental health conditions. The 4th ESC never gave Plaintiff or any other civilians, training on EEO or harassment. The Agency did give training to the Soldiers, which has different reporting requirements from the Civilians. Although Plaintiff received training as a Soldier, it did not address the requirements as a civilian employee, which Plaintiff was a civilian employee and never received training or instructions prior to her claim from the 4th ESC and trusted MG Tatu. Plaintiff still has not been made whole as a Civilian as she suffered severely. All the adverse actions were unjust and unfair and discrimination for retaliation against Plaintiff for participating in protected personnel actions in accordance with Title VII. For the foregoing reasons, Plaintiff respectfully requests that the Court(s) make Plaintiff Whole again by granting her a Jury. Plaintiff also respectfully requests that the Court(s) award her compensatory damages and reasonable attorneys' fees. Furthermore, Plaintiff asks that the Court(s) award any other relief it deems equitable.

IV. **Exhaustion of Federal Administrative Remedies:**

a. Plaintiff filed an appeal on April 3, 2023, with the Equal Employment Opportunity Commission regarding the defendant's alleged discrimination.

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

b. The Equal Employment Opportunity Commission (EEOC) issued a Notice of Right to Sue letter, on May 11, 2023

**V.   Relief:** *(State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.)*

Under the Civil Rights Act of 1991, 42 U.S.C. § 1981a, compensatory and punitive damages are available for a range of violations under Title VII, including retaliation. A cap on combined compensatory and punitive damages (excluding past monetary losses) ranges from $50,000 for employers with 15-100 employees, to $300,000 for employers with more than 500 employees. Section 207 of GINA incorporates all the same remedies available under Title VII. Punitive damages are available when a practice is undertaken "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Eligibility for punitive damages depends on the employer's state of mind, not on the "egregiousness" of the employer's misconduct. Under all the statutes enforced by the EEOC, relief may also potentially include back pay if the retaliation resulted in termination, constructive discharge, or non-selection, as well as front pay or reinstatement. Equitable relief also frequently sought by the Commission includes changes in employer policies and procedures, managerial training, reporting to the Commission, and other measures designed to prevent violations and promote future compliance with the law.  If the Commission finds

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

in favor of Complainant, the Commission should grant Plaintiff the following relief:

a. Compensatory damages ($87,000.00)

Payment to victims of discrimination for out-of-pocket expenses caused by the discrimination (such as costs associated with a job search or medical expenses) and to compensate them for any emotional harm suffered (such as mental anguish, inconvenience, or loss of enjoyment of life). Plaintiff should be awarded compensatory damages for having to relocate back to her home of record and be compensated for emotional harm she suffered as she is now diagnosed with several mental health challenges. Plaintiff endured pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life as a consequence of the Agency's unlawful act(s). Although Plaintiffs suffering can't be reversed, the compensatory damages will help increase a little enjoyment of life momentarily.

b. Front Pay/Retroactive placement in a job ($126,000.00)

Front pay compensates an individual when reinstatement is not possible in certain limited circumstances. Front pay may be awarded in lieu of reinstatement when: (1) no position is available; (2) a subsequent working relationship between the parties would be antagonistic; or (3) the employer has a record of long-term resistance to anti-discrimination efforts. For cases in which the employee or applicant is not selected for a position or promotion due

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

to discrimination, this would include an offer of placement into the position sought, or a substantially equivalent position within the same commuting area. The offer should be made retroactive to the date of the selection in question. In cases involving a discriminatory termination, the agency should offer to reinstate the complainant to his or her former position retroactive to the date of the termination.

Plaintiff should be awarded compensation pay equal to her salary plus interest, which she would have earned from November 26, 2017 (which, if allowed would have been Plaintiffs termination date) to April 19, 2019 (which is the date Plaintiff became employed), which she would have received a non-dual status government, if she was allowed placement in the PPP.  Placement in the PPP would have increased Plaintiffs job opportunity.

c. <u>Back Pay ($83,000.00)</u>

The purpose of a back pay award is to restore to the complainant the income he or she would have otherwise earned but for the discrimination. The most common discriminatory actions generating back pay are removals, suspensions, denials of promotions, and failure to hire.  Plaintiff should be awarded one year pay with interest, which is what she would have earned had she been allowed continued employment for one year past the date she lost dual status as was afforded her co-workers.

d. <u>Awards of costs and fees for attorney, expert, or non-legal services ($10,000.00)</u>

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

Complainants who prevail on claims alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended and the Rehabilitation Act of 1973, as amended, are presumptively entitled to an award of attorney's fees and costs. A prevailing complainant is entitled to recovery of his/her costs.

Complainants prevailing on claims under the Age Discrimination in Employment Act of 1967, as amended, and the Equal Pay Act of 1963, as amended, are not entitled to attorney's fees at the administrative level. A prevailing complainant is entitled to recovery of his or her costs. Costs include witness fees; transcript costs; and printing and copying costs. Plaintiff has attorney fees, as she hired the law offices of Melville Johnson PC during the MSPB process. She no longer has an attorney but does have attorney fees.

## VI.   Certification and Closing:

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

a. is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

b. is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.

c. the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**Thelma J. McGaddye (Plaintiff) V. Christine Wormuth (Defendant)**

d. the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

### Jury Trial Demand

Plaintiff demands trial by jury.
Date: June 9, 2023          Signature: _____

Thelma J. McGaddye
1630 Foxcreek Lane
Apopka, Florida 32703
(407) 851-2742
thelmajorowe@aol.com

ENCLOSURE(S):

1.   Memo from EEOC dated May 11, 2023 with right to sue. (3 pages)